UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

SERGIO MORRIS

VERSUS

THE GOODYEAR TIRE & RUBBER
COMPANY, *et al.*

CIVIL ACTION

NO. 25-1749

SECTION M (2)

## ORDER & REASONS

Before the Court is an emergency motion to remand filed by plaintiff Sergio Morris.[1] Defendant, The Goodyear Tire & Rubber Company ("Goodyear"), responds in opposition,[2] and Morris replies in further support of his motion.[3] Having considered the parties' memoranda, the record, and the applicable law, the Court grants the motion and remands this matter to the Civil District Court, Parish of Orleans, State of Louisiana, because the Court lacks subject-matter jurisdiction and because Goodyear has waived its right to remove the case. However, the motion is denied as to Morris's request for attorney's fees and costs.

### I. BACKGROUND

This action arises out of a claim for damages by Morris for asbestos exposure said to have caused his mesothelioma.[4] Morris instituted the present action in state court on March 12, 2025, alleging that he was exposed to injurious levels of asbestos in three ways: through his employment at Kelly-Springfield,[5] where he worked from 1965-1979; through emissions from Avondale

---

[1] R. Doc. 7.
[2] R. Doc. 11.
[3] R. Doc. 14.
[4] R. Doc. 1-2 at 2.
[5] In his state-court petition for damages, Morris named his former employer as "Kelly Springfield." *Id.* at 1. However, Goodyear, in its notice for removal, states that the corporation is called "The Kelly-Springfield Tire Corporation." R. Doc. 1 at 2 n.1. This Court uses the name provided by Goodyear, given that it is the successor in interest to Kelly-Springfield. *See id.*

Shipyard, which is located across the Mississippi River from where he resided from 1969-1974; and through the use of talcum powder while caring for his daughter.[6] According to Goodyear, Morris named the following entities as the defendants still relevant in this action:[7] Goodyear, successor in interest to Kelly-Springfield; Taylor-Seidenbach, Inc. ("Taylor-Seidenbach"); and Pecos River Talc LLC ("Pecos River Talc").[8] Eagle, Inc. ("Eagle"), a Louisiana corporation, was also named in the complaint, but never served.[9] For purposes of diversity jurisdiction under 28 U.S.C. § 1332, Morris, the only plaintiff, is a citizen of Louisiana,[10] and, according to Goodyear, Taylor-Seidenbach is the only nondiverse defendant left in the case.[11]

Soon after institution of the action, the state court granted Morris an expedited trial date due to his age and diagnosis.[12] Morris's trial in state court is set to begin on September 29, 2025.[13] By July 22, 2025, Morris reached a settlement agreement with Pecos River Talc,[14] leaving only Taylor-Seidenbach and Goodyear as defendants in the action, according to Goodyear. On July 24, 2025, Goodyear deposed Morris's expert witness, Dr. Brent Staggs.[15] Pursuant to the state-court scheduling order, discovery in the matter closed the next day, July 25, 2025.[16] On July 28, 2025, at 3:41 p.m., Goodyear received the transcript of Dr. Staggs's deposition.[17] Fifty-five minutes

---

[6] R. Doc. 1-2 at 1-2.
[7] Morris originally named several other defendants; however, all but one are not relevant to the pending motion because they were dismissed from the action before removal and had diverse citizenship in any event. *See id.* at 1-2.
[8] *Id.* at 1-3. Morris's petition originally named Red River Talc LLC as a defendant in the action. *Id.* at 1. However, pursuant to a consent motion to substitute, Red River Talc LLC was replaced by Pecos River Talc on April 23, 2025. R. Doc. 1-3. Although the parties reference both entities in their briefing, this Court will refer only to Pecos River Talc. *See* R. Doc. 1 at 3 n.2.
[9] *See* R. Docs. 1 at 7; 1-2 at 1-2.
[10] R. Doc. 1-2 at 1.
[11] *Id.* at 2; R. Docs. 1 at 7; 7-1 at 8.
[12] R. Doc. 7-1 at 1.
[13] *Id.* at 1-2.
[14] R. Doc. 1-4.
[15] R. Doc. 1-19.
[16] R. Doc. 7-7 at 1.
[17] R. Doc. 1-26.

later, at 4:36 p.m. on July 28, 2025 (which was the deadline for filing dispositive motions, pursuant to the scheduling order), Goodyear filed a motion for partial summary judgment in the state court regarding strict liability.[18]  Then, on August 1 and August 5, 2025, respectively, Goodyear filed two applications for pro hac vice admissions of its attorneys.[19]  On August 6, 2025, it filed oppositions to two of Morris's motions for summary judgment.[20]  On August 13, it filed an opposition to Morris's *Daubert* motion.[21]  On August 14, 2025, it filed a reply memorandum in support of its motion for summary judgment[22] and a supplementary opposition to Morris's *Daubert* motion.[23]  On August 15, 2025, Goodyear certified its circulation of the notice of hearing for its motion for partial summary judgment.[24]  And on August 21, 2025, it appeared at the hearing during which it argued in favor of its motion for summary judgment and against two motions filed by Morris – a *Daubert* motion and a motion for summary judgment.[25]

On August 26, 2025, just over a month before trial was set to begin on September 29, Goodyear filed a notice of removal on the basis that Morris has no reasonable possibility of recovering from the nondiverse Taylor-Seidenbach, who thus, claimed Goodyear, was improperly joined for the purposes of defeating diversity jurisdiction under 28 U.S.C. § 1332.[26]  Goodyear urged that its receipt of the deposition transcript of Dr. Staggs on July 28 (almost 30 days before removal) constituted an "other paper" under 28 U.S.C. § 1446(b)(3) from which it first ascertained that Morris had improperly joined Taylor-Seidenbach, and that removal was timely since it was

---

[18] R. Docs. 7-7 at 1; 12-6 at 77-99.
[19] R. Doc. 12-10 at 53-54, 59-60.
[20] R. Doc. 12-12 at 79, 124.
[21] *Id.* at 169.
[22] R. Doc. 12-14 at 51-57.
[23] *Id.* at 58-86.
[24] *Id.* at 87-88.
[25] R. Doc. 1-5 (reporting the argument and ruling on Goodyear's motion for summary judgment at pages 17-32).
[26] R. Doc. 1 at 6-21.

noticed within 30 days of receipt of the transcript.[27] On August 29, 2025, just three days later, Morris filed his emergency motion to remand the case back to state court.[28]

## II.   PENDING MOTION

In his motion to remand, Morris argues that removal is improper for four reasons. First, he argues that Goodyear's notice of removal failed to satisfy the legal standard for improper joinder because his claims against Taylor-Seidenbach are plausibly pleaded.[29] Alternatively, Morris maintains that, should this Court consider summary evidence in deciding improper joinder, he has established a possibility of recovery against Taylor-Seidenbach because he plans to use historical evidence against the company at trial.[30] In opposing Morris's first ground for remand, Goodyear argues that the allegations on the face of Morris's complaint are insufficient to defeat removal because they do not plausibly state a claim against Taylor-Seidenbach.[31] Alternatively, it argues that, despite completing discovery, Morris cannot produce any evidence that he was exposed to products manufactured by Taylor-Seidenbach or that those products were the cause of his mesothelioma.[32] Thus, says Goodyear, Morris has no reasonable possibility of recovery against Taylor-Seidenbach, so it is improperly joined.[33] In his reply, Morris again urges that he has established a possibility of recovery against Taylor-Seidenbach by pointing to evidence it plans to offer against the company at trial.[34]

---

[27] *Id.* at 21-22. Goodyear's theory is that Dr. Staggs was the last (*i.e.*, before discovery was complete) expert witness who might have been able to link Taylor-Seidenbach to the alleged asbestos exposure at issue and, according to Goodyear, he did not – as confirmed, it says, by the transcript of his deposition.
[28] R. Doc. 7.
[29] R. Doc. 7-1 at 9-12.
[30] *Id.* at 6-7.
[31] R. Doc. 11 at 7-10.
[32] *Id.* at 11-19.
[33] *Id.* at 19.
[34] R. Doc. 14 at 1-6.

Morris's second argument is that Goodyear's motion to remand is untimely under 28 U.S.C. § 1446(b) because Goodyear has known of Morris's allegations in his petition since the date it was served, which was well over 30 days before removal.[35] Alternatively, he argues that, although it received the transcript from Dr. Staggs's deposition on July 28, Goodyear took the deposition on July 24 and thus had actual knowledge of the information it alleges in the notice of removal to have made removal ascertainable on that date.[36] As a result, says Morris, the 30-day delay during which Goodyear could remove the case expired before Goodyear noticed removal.[37] Goodyear responds that it could not have noticed removal based on the petition because removability was not objectively ascertainable until discovery was complete.[38] To Morris's alternative argument, Goodyear responds that removal was timely because, pursuant to § 1446(b)(3), the 30-day period during which it could notice removal did not begin to run until it received the deposition transcript.[39] In reply, Morris claims that "Goodyear's reliance on the July 28 transcript is a post hoc justification" because it had much of the information upon which it based its improper joinder argument prior to that date.[40]

Morris's third argument for remand is that Goodyear waived its right to removal when it took several actions in state court which "'invok[ed] the processes of that court'" following its knowledge that the action was removable.[41] Goodyear responds that its actions in state court were "limited to preserving its defenses and complying with ordinary case management obligations while removability was still uncertain."[42] It argues that it never took "substantive steps that could

---

[35] R. Doc. 7-1 at 15-17.
[36] *Id.* at 15.
[37] *Id.* at 15-17.
[38] R. Doc. 11 at 19-20.
[39] *Id.* at 19.
[40] R. Doc. 14 at 7.
[41] R. Doc. 7-1 at 17-20 (quote at 17) (quoting *Brown v. Demco, Inc.*, 792 F.2d 478, 481 (5th Cir. 1986)).
[42] R. Doc. 11 at 21-22 (quote at 21).

5

be construed as a voluntary submission to state jurisdiction or a waiver of its federal rights."[43] In reply, Morris reiterates that "Goodyear intended to adjudicate the merits of this case and submit to the state court's jurisdiction."[44]

And, fourth, Morris argues briefly that Goodyear failed to obtain consent to removal from Pecos River Talc, which has reached a settlement agreement with Morris but has not paid out its claims or been dismissed from the action, so the removal is procedurally defective under 28 U.S.C. § 1446.[45] Goodyear opposes this argument by asserting that the settlement agreement renders Pecos River Talc a non-party to the suit who need not consent to removal.[46]

Finally, Morris requests attorney's fees and costs for his motion to remand, arguing that Goodyear had no objective basis for seeking removal and that he offered to enter into a stipulation to remand with Goodyear, to which it had not responded as of the time Morris filed its motion to remand.[47] Goodyear responds that removal "was grounded in objectively reasonable arguments under controlling precedent," noting that courts in this district have denied motions to remand in similar situations.[48]

### III.  LAW & ANALYSIS

A defendant may remove from state court to the proper United States district court "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). "A federal district court has subject matter jurisdiction over a state claim when the amount in controversy is met and there is complete diversity of citizenship between the parties." *Mumfrey v. CVS Pharmacy, Inc.*, 719 F.3d 392, 397 (5th Cir. 2013) (citing

---

[43] *Id.* at 21.
[44] R. Doc. 14 at 9.
[45] R. Doc. 7-1 at 2.
[46] R. Doc. 11 at 2.
[47] R. Doc. 7-1 at 21.
[48] R. Doc. 11 at 23.

28 U.S.C. § 1332(a)). Because federal courts have only limited jurisdiction, the removal statute is strictly construed, and any doubts or ambiguities are resolved against removal and in favor of remand. *Vantage Drilling Co. v. Hsin-Chi Su*, 741 F.3d 535, 537 (5th Cir. 2014); *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002). The party seeking removal has the burden of establishing "that federal jurisdiction exists and that removal was proper." *Manguno*, 276 F.3d at 723.

### A. Subject-Matter Jurisdiction

A federal court has a duty to inquire into the basis of its subject-matter jurisdiction over an action. *N.Y. Life Ins. Co. v. Deshotel*, 142 F.3d 873, 883 (5th Cir. 1998). If jurisdiction is lacking, the court must dismiss or remand the case. Fed. R. Civ. P. 12(h)(3); *Reule v. Jackson*, 114 F.4th 360, 365 (5th Cir. 2024), *cert. denied*, 145 S. Ct. 1431 (2025). A review of the pertinent facts in this case reveals that this Court cannot exercise subject-matter jurisdiction over this action. Even assuming Taylor-Seidenbach is improperly joined, there is no complete diversity between the parties because Eagle, a Louisiana citizen for purposes of 28 U.S.C. § 1332, remains a defendant in the action.

A nondiverse party's citizenship cannot be disregarded "simply because he was an unserved defendant." *Deshotel*, 142 F.3d at 883-84 (quote at 883) (collecting cases including *Pullman Co. v. Jenkins*, 305 U.S. 534, 540-41 (1939)). The Supreme Court has explained that, where an action has both resident and nonresident defendants, and only the nonresident defendant has been served, "the fact that [a] resident defendant has not been served with process does not justify removal by [a] non-resident defendant." *Pullman*, 305 U.S. at 540-41 (quote at 541). The Court, in considering a scenario like the one presented here, continued:

> It may be said that the non-resident defendant may be prejudiced because his co-defendant may not be served. On the other hand there is no diversity of citizenship,

7

and the controversy being a nonseparable one, the non-resident defendant should not be permitted to seize an opportunity to remove the cause before service upon the resident co-defendant is effected. It is always open to the non-resident defendant to show that the resident defendant has not been joined in good faith and for that reason should not be considered in determining the right to remove.

*Id.* at 541. The Fifth Circuit has observed that "[w]henever federal jurisdiction in a removal case depends upon complete diversity, the existence of diversity is determined from the fact of citizenship of the parties named and not from the fact of service." *Deshotel*, 142 F.3d at 883. Where a plaintiff names a nondiverse defendant in a lawsuit, "[d]iversity is not complete unless the [nondiverse] defendant is 'dropped formally, as a matter of record.'" *Guijarro v. Enter. Holdings, Inc.*, 39 F.4th 309, 313 n.2 (5th Cir. 2022) (quoting 14C CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 3723 (4th ed. 2022)); *see also Beechum v. Anointed Touch, Inc.*, 2022 WL 538968, at *2 (E.D. Tex. Jan. 18, 2022).

When Morris filed the instant petition in state court, he named Eagle as a defendant in the action.[49] In his petition, Morris explained that Eagle is a "domestic corporation" with its principal place of business in Louisiana,[50] thus making it a citizen of Louisiana for purposes of federal diversity jurisdiction. *See* 28 U.S.C. § 1332(c)(1) (providing that a corporation is a citizen of every state of incorporation and where it has its principal place of business). Indeed, it is widely acknowledged in asbestos cases in this district that Eagle is a Louisiana citizen. *See, e.g.*, *Rowland v. Union Carbide Corp.*, 2019 WL 4729473, at *1 (E.D. La. Sep. 27, 2019); *Bourke v. Exxon Mobil Corp.*, 2016 WL 836872, at *2 & n.19 (E.D. La. Mar. 4, 2016); *Poche v. Eagle, Inc.*, 2015 WL 7015575, at *1 (E.D. La. Nov. 10, 2015); *Smith v. Union Carbide Corp.*, 2013 WL 6244199, at *1 (E.D. La. Dec. 3, 2013). Plaintiff admits that Eagle was never served,[51] but he does not indicate

---

[49] R. Doc. 1-2 at 1.
[50] *Id.* at 2.
[51] R. Doc. 7-1 at 8.

8

that Eagle was dismissed from the case. In its notice of removal, Goodyear, too, explains that Eagle was never served,[52] and it does not claim that Eagle was dismissed from the case.[53] Nor does Goodyear allege that Eagle was improperly joined. *See Pullman*, 305 U.S. at 541 ("It is always open to the non-resident defendant to show that the resident defendant has not been joined in good faith and for that reason should not be considered in determining the right to remove."). Thus, Eagle remains a party to the suit, despite the fact it was never served. And a party's "non-diverse citizenship cannot be ignored simply because [it] was an unserved defendant." *Deshotel*, 142 F.3d at 883.

Accordingly, because Morris and Eagle are both citizens of Louisiana, there is no complete diversity among the parties, regardless of whether Taylor-Seidenbach was improperly joined. As such, this Court cannot exercise subject-matter jurisdiction over the present action.

### B. Waiver of the Right of Removal

Even if this Court could exercise subject-matter jurisdiction over the present action, Goodyear has waived its right of removal. A defendant waives its right to remove a case to federal court when it takes some action which "'invoke[s] the jurisdiction of the state court in resolving the issues presented by the original complaint.'" *Abraham Watkins Nichols Agosto Aziz & Stogner v. Festeryga*, 2025 WL 2621301, at *3 (5th Cir. Sep. 11, 2025) (quoting *Johnson v. Heublein, Inc.*, 227 F.3d 236, 244 (5th Cir. 2000)). In the Fifth Circuit, waiver "is no casual affair." *Id.* For a defendant's acts to constitute waiver, its intent to remain in state court must "'be clear and unequivocal,'" *id.* (quoting *Tedford v. Warner-Lambert Co.*, 327 F.3d 423, 428 (5th Cir. 2003)), and "'the right of removal is not lost by action in the state court short of proceeding to an

---

[52] R. Doc. 1 at 7.
[53] *See id.* at 3-4 (explaining that Morris's claims were dismissed against five other defendants, but omitting Eagle from the list).

9

adjudication on the merits.'" *Id.* (quoting *Beighley v. FDIC*, 868 F.2d 776, 782 (5th Cir. 1989)). Acts which merely amount to "procedural skirmishing" will not suffice as waiver. *Id.* Whether an act amounts to waiver is considered on a case-by-case basis, and "there is no bright line" rule. *Id.*

A days-old Fifth Circuit decision is particularly instructive as to the legal standard for waiver. In *Festeryga*, Edward Festeryga was sued by his former law firm, Abraham Watkins Nichols Agosto Aziz & Stogner ("Abraham Watkins"), in state court for various state-law claims. *Id.* at *1. On the same day it filed its complaint, Abraham Watkins obtained a temporary restraining order and moved for expedited discovery. *Id.* at *1, *4 n.28. Eight days later, Festeryga moved to dismiss the action under the Texas anti-SLAPP statute, which triggered an automatic stay of discovery pending resolution of the motion. *Id.* at *1. Festeryga never set the motion for hearing, and it was never decided on the merits. *Id.* at *3. The parties ultimately stipulated to a protective order and reached an agreement about production of materials. *Id.* at *1. But, on the eve of Festeryga's production deadline – which was only 17 days after receiving the complaint – he removed the case to federal court. *Id.* at *3-4. Abraham Watkins moved to remand the case on the grounds that Festeryga's earlier motion to dismiss constituted a waiver of his right to removal. *Id.* at *1. The district court granted the motion to remand, finding that the filing of any motion to dismiss categorically constitutes waiver and that the stay of discovery was further evidence of waiver. *Id.* at *3-4.

On appeal, the Fifth Circuit reversed the district court's holding. *Id.* at *5. It found that, because the motion to dismiss could not be decided without a hearing, and Festeryga never set a hearing, his motion to dismiss had not amounted to a waiver of his right to remove. *Id.* at *3. In explaining its reasoning, the court said:

10

> [A] dispositive motion, unaccompanied by a hearing or ruling, does not trigger waiver – particularly when … the motion carries collateral procedural effects (like staying discovery, expediting proceedings, or shifting burdens) apart from any merits decision. Defendants may have sound tactical reasons to file such a motion without any intent to seek a merits ruling.

*Id.* (footnote omitted) (citing *Kenny v. Wal-Mart Stores, Inc.*, 881 F.3d 786, 791-92 (9th Cir. 2018); *Cogdell v. Wyeth*, 366 F.3d 1245, 1249 (11th Cir. 2004)). Because Festeryga's motion "s[at] idle" for strategic reasons, it did not amount to "'submitting the cause to adjudication on the merits.'" *Id.* (alteration omitted) (quoting *Tedford*, 327 F.3d at 428). Festeryga's attempt to stay discovery also did not serve as evidence of waiver because he was simply "preserving the status quo until a new forum [took] over." *Id.* at *4. Finally, the brief 17-day timeline for the removal also weighed against a finding of waiver, with the Fifth Circuit reasoning that, given such a short time in state court, it was unlikely that Festeryga "was 'experimenting' with his case in state court before decamping to federal court." *Id.* (alteration omitted) (quoting *Rosenthal v. Coates*, 148 U.S. 142, 147 (1893)). Thus, the court held that Festeryga had not waived his right to remove the action. *Id.*

A reexamination of the operative facts here demonstrates that this case is distinguishable from *Festeryga* and clears the high hurdle of waiver: Goodyear received the deposition transcript it claims made removability first ascertainable at 3:41 p.m. on July 28, 2025.[54] Fifty-five minutes later, at 4:36 p.m., it filed its motion for partial summary judgment in state court on the issue of strict liability, thereby seeking an adjudication on the merits of that issue.[55] On August 14 – more than three weeks after it received the deposition transcript – Goodyear filed a reply memorandum in support of its summary-judgment motion.[56] On August 15, Goodyear noticed its summary-

---

[54] R. Doc. 1-26
[55] R. Docs. 7-7 at 1; 12-6 at 77-99.
[56] R. Doc. 12-14 at 51-57.

11

judgment for hearing in the state court.[57] On August 21, Goodyear appeared in court to argue in favor of its motion for summary judgment, as well as to oppose two of Morris's motions.[58] That day, the state court denied Goodyear's motion for partial summary judgment.[59] Only then, four days after this adverse ruling, did Goodyear remove the action to federal court.[60]

Goodyear's actions on and after July 28, 2025 (the date it says removability became ascertainable) evidence a clear and unequivocal intent to litigate the merits of the strict-liability issue in state court – actively pursuing an adjudication on the merits of this claim in state court before removal. While several of Goodyear's pre-removal actions – including filing oppositions to plaintiffs' motions, seeking to admit two attorneys pro hac vice, and circulating proposed judgments – could probably be categorized as "mere procedural skirmishing" which served only to maintain the "status quo," *id.* at *3-4, Goodyear's actions in pressing to ruling its motion for partial summary judgment on the issue of strict liability indicate its intent to litigate the merits of the claim in state court. *See, e.g.*, *Jacko v. Thorn Americas, Inc.* 121 F. Supp. 2d 574, 575-76 (E.D. Tex. 2000) (holding that the defendant waived its right of removal when it pursued, noticed for hearing, and argued its motion for summary judgment in state court after the basis for its later removal to federal court became evident but before it actually filed its notice of removal, and observing: "Unlike a motion to dismiss, a motion for summary judgment seeks a resolution of the case on the merits of a claim and is not filed concomitantly with or in lieu of an answer."); *Rosenthal*, 148 U.S. at 147 (explaining that the purpose of waiver in the removal context is to prevent a party from "experiment[ing] on his case in the state court, and, upon an adverse decision, then transfer[ring] it to the federal court").

---

[57] *Id.* at 87-88.
[58] R. Doc. 1-5.
[59] *Id.* at 30-32.
[60] R. Doc. 1.

Goodyear's motion for summary judgment is distinguishable from Festeryga's motion to dismiss in several respects that warrant a different outcome here. First, unlike Goodyear's summary-judgment motion, Festeryga's motion to dismiss "s[at] idle," "unaccompanied by a hearing or ruling." *Festeryga*, 2025 WL 2621301, at *3. But Goodyear did not let its summary-judgment motion sit idle. Instead, Goodyear took several actions to advance its motion for summary judgment, even after it claimed removability was ascertainable, including filing the motion, noticing it for hearing, replying in support of the motion, attending the hearing to argue in favor of the motion, and then receiving the state court's ruling on the motion.[61] There is perhaps no better example of "'submitting the cause to adjudication on the merits'" than litigating a motion for summary judgment through to the court's ruling. *Id.* (alteration omitted) (quoting *Tedford*, 327 F.3d at 428).

Second, Festeryga's motion to dismiss was, in essence, meant to halt discovery. *Id.* at *3. In contrast, Goodyear participated in discovery in state court and did not remove the case until after the close of discovery and five days after the state court denied its motion for partial summary judgment.[62] The timing of Goodyear's removal indicates that – far from "preserving the status quo until a new forum takes over" – Goodyear was "'experimenting' with [its] case in a state court before decamping to federal court." *Id.* at *4 (alteration omitted) (quoting *Rosenthal,* 148 U.S. at 147). Thus, while Goodyear's pursuit of its summary-judgment motion after receipt of the transcript (including filing the motion and a reply in support of the motion, noticing a hearing on the motion, and arguing the motion) demonstrate its intent to adjudicate the claim on the merits in state court, its removal of the case only after receiving an adverse ruling cements the inference that

---

[61] R. Docs. 12-6 at 77-99; 12-14 at 51-57, 87-88; 1-5 at 17-32.
[62] R. Docs. 1; 1-5 at 30-32; 7-7 at 1.

Goodyear intended to litigate the merits in state court and changed its mind only after receiving the unfavorable ruling.

The timing of Goodyear's removal – and its impact on Morris, given his own unenviable timeline – further renders this case one of the "extreme situations" for which federal courts around the country reserve waiver. *Id.* at *3 n.15 (collecting cases). Thus, while Goodyear's receipt of Dr. Staggs's deposition transcript on July 28, 2025 constitutes the "other paper" triggering the 30-day clock for removal under § 1446(b)(2), this Court cannot ignore the fact that Goodyear actually deposed Dr. Staggs four days earlier.[63] Hence, Goodyear had actual knowledge of the facts revealed in the deposition on July 24. But it still chose to file its motion for partial summary judgment on the issue of strict liability four days after it gained this knowledge and even after receiving the deposition transcript,[64] and it waited until August 26, 2025 – over a month after July 24 – to file its notice of removal.[65] Had Goodyear filed its summary-judgment motion solely because July 28 was the deadline for dispositive motions, one would have expected it to have removed the case as early as possible – as the Fifth Circuit emphasized Festeryga did by removing his case in just 17 days – rather than on the eve of the expiration of the 30-day period for removal. *Id.* at *4. And Goodyear waited to do so until just a month before trial was slated to begin in state court. In this third way, the longer interval for Goodyear's removal distinguishes this case from *Festeryga*.

This Court is aware that "[Fifth Circuit] precedent demands a high bar for finding waiver." *Id.* at *2. This case clears that bar. Goodyear's actions plainly evidence an intent to adjudicate the merits of the case in state court. And the timing of its removal, coming as it did in the wake

---

[63] R. Doc. 1-19.
[64] R. Doc. 12-6 at 77-99.
[65] R. Doc. 1.

of an adverse ruling and a month before trial, carries especially harsh consequences for the plaintiff here.

Having decided Morris's motion to remand on the grounds of subject-matter jurisdiction and waiver, the Court need not consider the remaining questions raised by the parties in their briefing.

### C. Attorney's Fees and Costs

The lack of subject-matter jurisdiction and waiver notwithstanding, it cannot be said that Goodyear did not have an objectively reasonable basis to seek removal. After all, no party raised the question of Eagle's citizenship destroying diversity, and the controlling authority on waiver is just days old. Thus, the Court, in an exercise of its discretion, declines to award attorney's fees to Morris under 28 U.S.C. § 1447(c). *See Thomas v. S. Farm Bureau Life Ins. Co.*, 751 F. App'x 538, 540 (5th Cir. 2018) ("In general, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. If the removing party could conclude from the case law that its position was not an unreasonable one at the time of removal, then it had an objectively reasonable basis for removal." (internal citations, quotation marks, and alteration omitted)).

### IV. CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that Morris's motion to remand (R. Doc. 7) is GRANTED, and this case is REMANDED to the Civil District Court, Parish of Orleans, State of Louisiana.

IT IS FURTHER ORDERED that Morris's request for attorney's fees and costs associated with the removal is DENIED.

New Orleans, Louisiana, this 17th day of September, 2025.

                                                                                            BARRY W. ASHE
                                                                                            UNITED STATES DISTRICT JUDGE